Danforth v. Cleary.

# HENRY R. DANFORTH
## v.
## THOMAS CLEARY.

*Sales—Bill of Sale—Security in Nature of Mortgage—Evidence—Instructions.*

1.   In an action brought to recover the price of a quantity of corn claimed to have been sold and delivered to the defendant for a sum named, this court holds, in view of the evidence, that the bill of sale involved was intended as a security; that the plaintiff was to be credited with the proceeds thereof when finally delivered, and that in view of the fact that plaintiff had failed or been unable, without fault of the defendant, to make delivery, whereby defendant received no benefit from the security, no recovery could be had against him.

2.   Where, in such case, no price is agreed upon, the quantity not determined, and the corn never delivered, the title to corn in question can not pass from its owner to another.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Iroquois County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. J. W. DOUGHERTY and F. L. HOOPER, for appellant.

Mr. C. H. PAYSON, for appellee.

CARTWRIGHT, J.   This suit was commenced by Thomas Cleary against Henry R. Danforth, and the declaration contained a single count only for goods, wares and merchandise sold and delivered.

On this declaration Cleary sought to recover the price of 2,000 bushels of corn which he claimed to have sold and delivered to Danforth for the agreed price of $800.   There was a verdict for Cleary for $800, from which the court required to be remitted $240, and judgment was entered for $560.

On the 16th day of December, 1885, appellee, being indebted to appellant and his father, was applied to by appellant for money to apply on the indebtedness.   He was unable to make any payment of money, but then had on his farm two cribs of corn which appellant had never seen and knew nothing about except from appellee's statements.   Appellee says they contained about 2,000 bushels.   Corn was then worth something over twenty cents per bushel—probably about twenty-two cents.

Appellee did not want to sell the corn at that time and at that price.   It was expected that it would be worth more the

following summer. As a result of their conversation at that time a bill of sale was made of 2,000 bushels of corn in cribs on land therein described, with full warranty of title of the corn and against all claims, for the expressed consideration of $800, and the corn was to be delivered by appellee at Ashkum, Illinois, free from charge, whenever required so to do.

Appellee claimed on the trial that this transaction was an absolute sale of the corn, while appellant contended that it was intended as a security in the nature of a mortgage.

It appears that no indorsement or credit was made or given at the time, either on indebtedness due appellant or appellant's father, and that the latter indebtedness was subsequently satisfied by foreclosure of a mortgage securing the same and for the full amount.

The parties agree that the proceeds of the corn was to be applied on the indebtedness, and it seems to have been intended that the credit should be given when the corn should be hauled to Ashkum station and disposed of. Appellant is corroborated in his version of the transaction by George E. Wild, and it is scarcely probable that appellant would buy corn of appellee at nearly double the market price without some forcible reason which does not appear in this case.

We are satisfied from a consideration of all the evidence, that this bill of sale was intended as a security, and that appellee was to be credited with the proceeds of the corn when finally delivered. This was the view of the evidence taken by the trial court, as is clearly shown by the requirement of the court that appellee remit $240 from the verdict, as counsel for appellee say, because the market price of corn at the time an actual subsequent delivery of the corn at Larson's was claimed, was only twenty-eight cents. In this conclusion of the trial court we concur.

After this arrangement was made, the cribs of corn remained on appellee's farm and in his possession. His sons hauled from the cribs and sold for their own account 300 or 400 bushels at Ashkum.

On the 23rd day of January, 1886, execution was issued against appellee for $190 in favor of Sheldon and McDill, and

was levied on the corn in the crib, and the corn was sold for $235 to the attorney for the judgment creditors. By direction of McDill about 463 bushels of the corn were hauled to a dealer in Ashkum and sold.

Appellant learned of the sale and claimed the proceeds, but appellee told him that the corn so hauled belonged to his wife, and appellant gave up the claim. The remainder of the corn was then hau.ed by appellee to one Larson on an adjoining farm for appellant, but was replevied by McDill from appellant and Larson, and on a trial McDill was successful. Appellant received none of the corn to which he got any title, or which he was able to hold.

There may be some uncertainty from the evidence whether the corn sold by appellee's sons reduced the quantity below 2,000 bushels and also as to the amount hauled to Larson's, but the evidence clearly shows that the corn was all sold by members of appellee's family, or taken for his debt while in his possession without any fault of appellant.

Appellee had agreed to deliver the corn at Ashkum when required so to do. He made no delivery of the corn except what he hauled to Larson's, and that had been sold for his debt, and it was no longer in his power to make an effectual delivery.

The bill of sale having been made as a security, and appellee having failed or been unable without fault of appellant to make delivery, whereby appellant received no benefit from the security, appellee could not recover.

On the trial appellant asked the court to instruct the jury that if the price for the corn had not been agreed upon, and the quantity not determined, and the corn never delivered, then the title to the corn would not pass to appellant, but the court added to the instruction the words, "as against third parties."

This was equivalent to telling the jury that the title would pass as between the parties, and the modification was erroneous.

The judgment is reversed and cause remanded.

*Reversed and remanded.*